## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

JAN 30 2026

LAURA A. AUSTIN, CLERK
BY:_____
DEPUTY CLERK

|  |  |
|---|---|
| **GRAYSON COTES,** | ) |
|  | ) |
|  | ) |
|  | ) |
| *Plaintiff,* | ) |
|  | ) |
| v. | ) |
|  | ) |
| **QUALICHEM, INC.** | ) |
|  | ) |
| **SERVE**: R/A: Harry S. Rhodes | ) |
| 318 Washington Ave, | ) |
| Roanoke, VA, 24016 | ) |
|  | ) |
| -AND- | ) |
|  | ) |
| **TIMOTHY T. DAVIS,** | ) |
|  | ) |
| **SERVE**: 7007 FAIRWAY RIDGE CT, | ) |
| Salem, VA 24153 | ) |
| -AND- | ) |
|  | ) |
| **DOUGLAS M. FRASSA,** | ) |
|  | ) |
| **SERVE**: 215 WALNUT TRACE DRIVE | ) |
| Hardy, VA 24101 | ) |
| -AND- | ) |
|  | ) |
| **TAKUYA ISHIKAWA,** | ) |
|  | ) |
| **SERVE**: 34-126 CHOME CHIDORI OTA-KU, | ) |
| Tokyo, Japan 146, JPN | ) |
| -AND- | ) |
|  | ) |
| **JARET MONTEFORTE,** | ) |
|  | ) |
| **SERVE**: 465 CROFTON DRIVE | ) |
| Vinton, VA 24179 | ) |

Civil Action No. 7:26-CV-00077

**JURY TRIAL DEMANDED**

1

|  |  |
|---|---|
| -AND- | ) |
|  | ) |
|  | ) |
| **JOHN BREEDLOVE**, | ) |
|  | ) |
| SERVE: 402 Tazewell Avenue SE | ) |
| Roanoke, VA 24013 | ) |
| -AND- | ) |
|  | ) |
| **WOODS ROGERS VANDEVENTER BLACK PLC** | ) |
|  | ) |
| SERVE: R/A: MARK D. LOFTIS | ) |
| 10 S Jefferson Street Suite 1400, | ) |
| Roanoke, VA 24011 | ) |
| -AND- | ) |
|  | ) |
| **YUSHIRO MANUFACTURING AMERICA, INC.** | ) |
|  | ) |
| SERVE: 783 WEST MAUSOLEUM ROAD, | |
| SHELBYVILLE, INDIANA 46176 | |
|  | ) |
| *Defendants*. | ) |

## COMPLAINT

I, Grayson Cotes ("Mr. Cotes" and/or "Plaintiff"), bring this action against Defendant QualiChem, Inc. ("QualiChem"), Defendant Timothy T. Davis ("Mr. Davis"), Defendant Douglas M. Frassa ("Mr. Frassa"), Defendant Takuya Ishikawa ("Mr. Ishikawa"), Defendant Jaret Monteforte ("Mr. Monteforte"), Defendant John Breedlove ("Mr. Breedlove"), Defendant Yushiro Manufacturing America, Inc. ("Yushiro"), and Defendant Woods Rogers Vandeventer Black PLC ("Woods Rogers") (collectively, "Defendants") under Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000e-2, Virginia's Human Rights Act, VA Code Ann. § 40.1-27.3, and the common law of Virginia.

## I.     SUMMARY

2

1.    I, Plaintiff, have evidence that QualiChem unlawfully terminated Mr. Cotes, after he reported sexual misconduct, religious-based harassment, sex-based discrimination, and OSHA/VOSH violations that QualiChem's management (including, but not limited to, Mr. Breedlove and Mr. Monteforte) endorsed and promoted within the facility at 510 Branch Drive, Salem, Virginia 24153. Mr. Cotes, also, holds evidence that Woods Rogers encouraged QualiChem to retaliate against Plaintiff, in the form of unlawful termination.

## II.    SUPPLEMENTAL JURISDICTION

2.    Federal claims are the main concern of this complaint (i.e. Title VII), but Virginia's State laws are, also, of great importance—since they entangle to form one case, both should be heard within this Court; (See 28 U.S. Code § 1367).

3.    42 U.S. Code § 2000e-5(f) and 28 U.S. Code § 1331—also—grant this Court supplemental jurisdiction.

4.    Furthermore, all illegal activities—conducted by Defendants—occurred within Salem, Virginia; Salem, Virginia is within the Western District of Virginia, so the choice of this Court is none other than appropriate.

## III.    PARTIES

5.    I, Mr. Cotes, have resided within the Roanoke Valley, since late 2021.

6.    I, Mr. Cotes, worked at QualiChem's "Plant 2," located at 510 Branch Drive, Salem, Virginia—from December 2023 to July 2024, when Mr. Cotes was unlawfully terminated.

3

7.      Defendant, QualiChem Inc. is a stock corporation, and according to the State Corporation Commission, holds its principal office at 2003 Salem Industrial Drive, PO Box 926, Salem, Virginia 24153-3143.

8.      Mr. John Breedlove is a registered sex offender, and lives at 402 Tazewell Ave SE, Roanoke, Virginia 24013.

9.      Mr. Breedlove and Mr. Monteforte—both, agents of QualiChem—are management officials, at QualiChem's "Plant 2."

10.     Mr. Jaret Monteforte resides at 465 Crofton Drive, Vinton, Virginia 24179

11.     Mr. Monteforte created and promoted a sexually discriminatory "graph," that was endorsed by Mr. Breedlove, and kept in the employees' general work area.

12.     Such "graph" is an example of the derogatory, sexualized, dangerous culture that QualiChem promotes.

13.     QualiChem illegally punished Mr. Cotes, for reporting such workplace misconduct.

14.     Woods Rogers Vandeventer Black PLC is a law firm that holds its principal office at 10 S Jefferson St Ste 1800, Roanoke, Virginia 24011.

15.     Brittney Crigler, QualiChem's human resources representative, confirmed that Woods Rogers encouraged QualiChem's unlawful employment practices, and specifically, endorsed the unlawful termination of Mr. Cotes.

16.     Mr. Timothy T. Davis is QualiChem's President, and lives at 7007 Fairway Ridge CT, Salem, Virginia 24153.

4

17.     Mr. Douglas M. Frassa is the Executive Vice President of QualiChem, and lives at 215 Walnut Trace Drive, Hardy, Virginia 24101.

18.     Mr. Cotes brought the unlawful employment practices—directly—to Mr. Frassa's attention, but was ultimately ignored.

19.     There is no doubt that Mr. Frassa endorsed and validated QualiChem's sexually discriminatory workplace-culture.

20.     Yushiro Manufacturing America, Inc. introduced a "partnership," with QualiChem, around 2018;

21.     However, Yushiro is QualiChem's majority stockholder; basically, Yushiro owns QualiChem;

22.     Furthermore, Mr. Cotes' 401k documents reveal that Yushiro and QualiChem were, both, Plaintiff's employers;

23.     Yushiro is not registered with Virginia's State Corporation Commission.

24.     Mr. Takuya Ishikawa resides at 34-162 Chome Chidori Ota-Ku, Tokyo, Japan 146, JPN.

25.     Mr. Ishikawa is a Director at—both—Yushiro Manufacturing America, Inc. and its parent company, Yushiro Chemical Industry Co., Ltd.

26.     Mr. Ishikawa is, also, listed as a Director for QualiChem (according to Virginia's State Corporation Commission).

27.     Defendants *must* be held liable, for their actions, as they are conducting illegal business practices—no better than street, criminal organizations.

IV.     **EXHAUSTION OF REMEDIES**

5

28.     On July 24, 2024, Mr. Cotes was unlawfully terminated from his position, as a Production Associate, at QualiChem's "Plant 2," located at 510 Branch Drive, Salem, Virginia.

29.     On May 5, 2025—within the 300 days allotted to Plaintiff, by federal and Virginia law—Mr. Cotes filed a Charge of Discrimination, against QualiChem, with the Equal Employment Opportunity Commission (EEOC).

30.     On November 12, 2025, Plaintiff requested a Notice of Right to Sue, as 180 days had passed, since the filing of Plaintiff's Charge of Discrimination.

31.     On November 14, 2025, the EEOC granted Plaintiff's request, and issued Mr. Cotes a Notice of Right to Sue.

32.     I, Grayson Cotes, am—now—bringing this complaint within the ninety day period to do so.

## V.    LEGAL BACKGROUND

### A.  Title VII of the Civil Rights Act of 1964

33.     Section 2000e-2 [Section 703],   reads, "It shall be an unlawful employment practice for an employer - (1) to…discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

34.     Section 2000e-3, [Section 704] states, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or

6

because he has made a charge, testified, assisted, or participated in any manner in an investigation…"

35.    Depending on the amount of employees, Title VII limits the amount of damages that can be received—capped at $300,000.

## B. Virginia's Human Rights Act

36.    § 2.2-3900 reads, "[i]t is the policy of the Commonwealth to: 2. Safeguard all individuals within the Commonwealth from unlawful discrimination in employment because of…religion…or…sex…"

37.    § 2.2-3905(B) states, "It is an unlawful discriminatory practice for: 1. An employer to…discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's…religion…[or] sex…"

38.    Whereas Title VII permits limitations on damages, the VHRA does not limit the relief a Plaintiff, like myself, can claim.

## C. VA Code § 40.1-27.3

39.    § 40.1-27.3 reads, "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: (1)…reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official…(3) [r]efuses to engage in a criminal act that would subject the employee to criminal liability; (4) [r]efuses an employer's order to perform an action that violates any federal or state law or

7

regulation and the employee informs the employer that the order is being refused at that reason; or (5) [p]rovides information to…any governmental body or law-enforcement official conducting an investigation, hearing, or inquiry into any alleged violation by the employer of federal or state law or regulation."

40.    § 40.1-27.3(C) reads, "…[t]he court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

### E. *Respondeat Superior*

41.    "Respondeat superior is a legal doctrine…that holds an employer or principal legally responsible for the wrongful acts of an employee or agent, if such acts occur within the scope of employment or agency." — *Cornell's Legal Information Institute.*

42.    "Accordingly, we conclude that the district court erred in dismissing VanBuren's claim against Dr. Grubb based on its determination that 'were the Virginia Supreme Court to directly address this issue, it would find that wrongful discharge claims by an employee are cognizable only against an employer and not against supervisors or co-employees in their individual capacity.' VannBuren v. Va. Highlands Orthopedic Spine Ctr., LLC, 728 F. Supp. 2d 791, 794 (W.D. Va. 2010)." —*VanBuren v. Grubb, Court of Appeals, 4th Circuit 2013*.

## VI.    STATEMENT OF FACTS

43.    I, Plaintiff, began working at QualiChem, around December 2023.

44.    Initially, Mr. Cotes was placed at QualiChem, by Action Personnel (a temp-to-hire agency).

45.    Placed at QualiChem's "Plant 2," Mr. Cotes handled chemical products and raw materials—either assisting the blenders, containing and sealing newly-made product(s), cleaning mixing kettles, or transferring product from one container to another.

46.    Plaintiff worked the only shift available at QualiChem's Plant 2—6AM to finish.

47.    Due to Mr. Cotes' phenomenal performance, around March 2024, Grayson Cotes was hired-on, as a full-time QualiChem employee.

48.    Some personal protective equipment (PPE) was provided, but Mr. Cotes was made to handle *toxic* material, and QualiChem never provided Mr. Cotes with the standard doctor's visit—that they granted to everyone else—that would grant Plaintiff the ability to wear a full-face respirator.

49.    Similarly, management actually encouraged the employees, including Mr. Cotes, to not wear full PPE.

50.    Defendant, Mr. Breedlove, also, encouraged employees to not wear seatbelts, on the facility's forklifts.

51.    Early in Mr. Cotes' time at QualiChem, Defendants, Mr. Breedlove and Mr. Monteforte, held a meeting in the employee break room—in respect to an OSHA complaint that had temporarily shut-down QualiChem's Plant 3, located in Nevada— relaying that "if anyone in here [any employee at Plant 2] does that [makes a report to OSHA], you'll be out of here [unlawfully terminated], QUICK!"

9

52.     About June 2024, Mr. Cotes filed an OSHA complaint, in reference to QualiChem's hazardous work-environment.

53.     That same week, OSHA showed up for an inspection.

54.     Though Mr Cotes requested to stay anonymous, a day or two after OSHA's walkthrough, Mr. Breedlove—in the employee break room, in front of most of the employees at Plant 2—accused Mr. Cotes of being the whistleblower.

55.     Mr. Cotes, immediately, started receiving hateful threats and harassment, from his coworkers.

56.     Mr. Cotes, already, had been bullied by Defendant, Mr. Monteforte, and other coworkers, prior to the OSHA incident, but this only made it worse.

57.     Defendant, Mr. Monteforte—a QualiChem management official—constantly discriminated against plaintiff, because of Plaintiff's religious beliefs.

58.     On the morning of July 15, 2024, Isaiah Brown, a blender at Plant 2, went up to Mr. Cotes and started verbally harassing him.

59.     Mr. Cotes was in the process of transferring *bleach*, from one container to another, as was Mr. Cotes' job, but Isaiah Brown (QualiChem's agent) obstructed Plaintiff's work-process, stole Plaintiff's forklift, and put him in clear danger.

60.     Mr. Cotes followed after Mr. Brown, and with the intent of taking his forklift back, stopped, as Mr. Brown rushed to open the container that Mr. Brown had picked up after obstructing Plaintiff's work process.

10

61. Plaintiff—having been consistently bullied and harassed by his coworkers, with the green light from management—took Mr. Brown's work documents, and threw them in the trash (doing no real damage, as Mr. Brown had to simply print off another copy).

62. Then, Mr. Cotes went directly to Defendant, Jaret Monteforte (one of Plaintiff's supervisors) and requested that Mr. Monteforte stop the harassment.

63. After reporting the harassment, Mr. Cotes went back to work.

64. Shortly after—less than an hour or so—Mr. Cotes went back to Mr. Monteforte and requested to speak with a Human Resources representative, given that QualiChem's Plant 2 did not have one onsite.

65. Mr. Monteforte simply laughed at Plaintiff and walked away.

66. On July 17, 2024, Mr. Cotes was called into a meeting in the break room, with Mr. Monteforte, Mr. Breedlove, Mr. Brown, and another agent of QualiChem (Lee Meador).

67. Lee Meador is a Supervisor at QualiChem's Plant 1, located at 2003 Salem Industrial Drive, Salem, Virginia 24153.

68. Immediately, Mr. Cotes refused to engage in the conversation, unless a Human Resources representative—that he had requested two days prior—was involved.

69. All three of QualiChem's management officials refused to grant Plaintiff's request, and instead, ganged up on Mr. Cotes and sent Plaintiff home, "until further notice."

70. Plaintiff has audio evidence of this incident.

71.     As Mr. Cotes was leaving Plant 2, Plaintiff took the time to text Defendant, Doug M. Frassa, a picture of Jaret Monteforte's disgusting woman-sex graph, and informed Mr. Frassa that Plaintiff had some workplace conduct that Mr. Cotes wanted to report.

72.     On Mr. Cotes' ride home, he received a call from Brittney Crigler, QualiChem's Human Resources official.

73.     Ms. Crigler invited Mr. Cotes back to Plant 2, to have an in-person conversation.

74.     Plaintiff agreed and drove back to Plant 2.

75.     Initially, Ms. Crigler refused to hold a conversation while Mr. Cotes recorded, but after Plaintiff insisted—given that he would've had no evidence of QualiChem's management officials initial retaliation, if Plaintiff wasn't recording—and Ms. Crigler ultimately accepted.

76.     During Plaintiff's talk with Ms. Crigler, Mr. Cotes used that time to address all of his concerns—including, but not limited to:

• Mr. Breedlove and Mr. Monteforte's promotion and securement of a sexually discriminatory, workplace environment;

• Religious-based discrimination, from Mr. Monteforte, Mr. Breedlove, Noah Hodges (another QualiChem employee), Isaiah Brown, and Tyler Nunley (Mr. Cotes' trainer at QualiChem, and a former agent thereof);

• Mr. Monteforte's sexually derogatory "woman-sex graph;"

• The ongoing promotion and endorsement of a hazardous work environment, in reference to the VOSH/OSHA violations at Plant 2;

12

77.    Mr. Cotes has audio evidence of this conversation, and evidence of Defendant, Jaret Monteforte's graph—and evidence of Ms Crigler verifying that it was in fact Mr. Monteforte's.

78.    Mr. Cotes was sent home for the evening, and told to come back at his normal start time (6AM) the following morning.

79.    Ms. Crigler later changed that plan to Mr. Cotes going to Plant 1, at Ms. Crigler's office, around 9AM, and then Mr. Cotes could return to work.

80.    Mr. Cotes arrived the next morning, and was assured that his complaints had been taken care of.

81.    During this conversation, Ms. Crigler admitted that Mr. Cotes had been an outstanding employee, and had never received or heard of any complaints—only compliments.

82.    Plaintiff has audio evidence of this conversation.

83.    Upon Plaintiff's return to work, he realized that the harassment had not stopped—but had grown tremendously.

84.    Plaintiff immediately informed Ms. Crigler, and again, was told not to return until further notice.

85.    On July 24, 2024, Ms. Crigler, by text, informed Mr. Cotes that he was being terminated, and that Woods Rogers not only encouraged this unlawful decision, but aided in the conspiracy of such.

## VII.    CAUSES OF ACTION

### COUNT I

13

**Defendants Committed Religious and Sex-Based Discrimination, Against Plaintiff—Violating Title VII of the Civil Rights Act of 1964 and 42 U.S. Code § 2000e-2**

86.    Paragraphs/lines 1-85 are hereby re-alleged and embodied in this Count I;

87.    Under Title VII, Mr. Cotes was an employee, and Defendants (QualiChem and Yushiro) were Mr. Cotes' employer;

88.    Section 2000e-2 [Section 703],   reads, "It shall be an unlawful employment practice for an employer - (1) to…discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…religion…[or] sex…"

89.    QualiChem and Yushiro's management and human resources officials were fully aware of such harassment, condoned it, and unlawfully dismissed his claims;

90.    Because of Defendants' illegal, wanton actions—and their poor, inhumane treatment of Mr. Cotes—Plaintiff has suffered immense emotional distress, a surplus of embarrassment, mental suffering, deprivation of retirement benefits (and other employee benefits, including but not limited to medical, dental, and vision coverage), and a continuous loss of wages; Mr. Cotes will continue to suffer a loss of income, unless granted his much owed relief, by a jury or an Honorable Court.

91.    42 U.S. Code § 2000e-5 entitles Mr. Cotes to recover compensatory and punitive damages, attorney fees, costs, as well as interest.

92.    42 U.S. Code § 2000e-5(g)(1) reads, "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate,

14

which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay …or any other equitable relief as the court deems appropriate…"

## COUNT II
### Defendants Committed Religious and Sex-Based Discrimination, Against Plaintiff—Violating Virginia's Human Rights Act

93.    Paragraphs/lines 1-92 are hereby re-alleged and embodied in this Count II;

94.    Under Virginia's Human Rights Act, Mr. Cotes was an employee, and Defendants (QualiChem and Yushiro) were Mr. Cotes' employer;

95.    § 2.2-3900 reads, "[i]t is the policy of the Commonwealth to: 2. Safeguard all individuals within the Commonwealth from unlawful discrimination in employment because of…religion…or…sex…"

96.    § 2.2-3905(B) states, "It is an unlawful discriminatory practice for: 1. An employer to…discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's…religion…[or] sex…"

97.    Defendant's management team and human resources officials were fully aware of such harassment, condoned it, and unlawfully dismissed Mr. Cotes' claims;

98.    Because of Defendants' illegal, wanton actions—and their poor, inhumane treatment of Mr. Cotes—Plaintiff has suffered immense emotional distress, a surplus of embarrassment, mental suffering, deprivation of retirement benefits (and other employee benefits, including, but not limited to, medical, dental, and vision coverage), and a continuous loss of wages. Mr. Cotes will continue to suffer a loss of income, unless granted his much owed relief, by a jury or an Honorable Court.

15

99.    § 2.2-3908(B) reads, "If the court or jury finds that an unlawful discrimination has occurred, the court or jury may award to the plaintiff, as the prevailing party, compensatory and punitive damages and the court may award reasonable attorney fees and costs and may grant as relief any permanent or temporary injunction, temporary restraining order, or other order, including an order enjoining the defendant from engaging in such practice, or order such affirmative action as may be appropriate."

## COUNT III

### Defendants Terminated Plaintiff, for Reporting Religious and Sex-Based Discrimination— Violating Title VII of the Civil Rights Act of 1964 and 42 U.S. Code § 2000e-2

100.    Paragraphs/lines 1-99 are hereby re-alleged and embodied in this Count III;

101.    Under Title VII, Mr. Cotes was an employee, and Defendants (QualiChem and Yushiro) were Mr. Cotes' employer;

102.    Mr. Cotes reported the sex-based and religious-based discrimination, to Defendants' management and human resources officials.

103.    Following Mr. Cotes' reporting of such harassment and discrimination, Defendants unlawfully terminated Plaintiff.

104.    Because of Defendants' illegal, wanton actions—and their poor, inhumane treatment of Mr. Cotes—Plaintiff has suffered immense emotional distress, a surplus of embarrassment, mental suffering, deprivation of retirement benefits (and other employee benefits, including, but not limited to, medical, dental, and vision coverage), and a continuous loss of wages. Mr. Cotes will continue to suffer a loss of income, unless granted his much owed relief, by a jury or an Honorable Court.

16

105.    42 U.S. Code § 2000e-5 entitles Mr. Cotes to recover compensatory and punitive damages, attorney fees, costs, as well as interest.

106.    42 U.S. Code § 2000e-5(g)(1) reads, "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay …or any other equitable relief as the court deems appropriate…"

## COUNT IV

### Defendants Terminated Plaintiff, for Reporting Religious and Sex-Based Discrimination—Violating VA Code Ann. § 40.1-27.3

107.    Paragraphs/lines 1-106 are hereby re-alleged and embodied in this Count IV;

108.    § 40.1-27.3(A) reads, "[a]n employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee: (1)…reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official…(3) [r]efuses to engage in a criminal act that would subject the employee to criminal liability; (4) [r]efuses an employer's order to perform an action that violates any federal or state law or regulation and the employee informs the employer that the order is being refused at that reason; or (5) [p]rovides information to…any governmental body or law-enforcement

17

official conducting an investigation, hearing, or inquiry into any alleged violation by the employer of federal or state law or regulation."

109. Mr. Cotes reported the sex-based and religious-based discrimination, to Defendants' management and human resources officials.

110. Mr. Cotes, in June 2024, made reports to OSHA/VOSH, regarding Defendants' violations of state and federal law (as well as governmental safety regulations).

111. On July 18, 2024, Mr. Cotes revealed to Brittney Crigler (Defendants' human resources official) that he had submitted an OSHA complaint, regarding the unsafe working conditions, at QualiChem's Plant 2.

112. Following Mr. Cotes' reporting of such harassment, discrimination, and OSHA/VOSH violations, Defendants unlawfully terminated Plaintiff.

113. § 40.1-27.3(C) reads, "…[t]he court may order as a remedy to the employee (i) an injunction to restrain continued violation of this section, (ii) the reinstatement of the employee to the same position held before the retaliatory action or to an equivalent position, and (iii) compensation for lost wages, benefits, and other remuneration, together with interest thereon, as well as reasonable attorney fees and costs."

VIII. **URGE FOR RELIEF**

**WHEREAS**, Plaintiff, Mr. Cotes, urges this Court for an Order:

a. Stating that Defendants committed sex-based and religious-based discrimination against Mr. Cotes;

b.      Stating that Defendants retaliated against Plaintiff for complaining about religious-based harassment, reporting sex-based discrimination, and filing an OSHA complaint regarding QualiChem's hazardous work environment;

c.      Requiring Defendants—jointly and under full liability—to pay Plaintiff compensatory damages for all emotional distress, and punitive damages in the amount of $300,000;

d.      Requiring Defendants to re-hire Mr. Cotes into his previously held position, or pay Mr. Cotes an amount equal to the ongoing loss of wages and benefits;

e.      Requiring Defendants to pay Plaintiff for the immense emotional distress, surplus of embarrassment, mental suffering, deprivation of retirement benefits (and other employee benefits, including, but not limited to, medical, dental, and vision coverage), and a continuous loss of wages;

f.      Stating Plaintiff be awarded all reasonable attorney fees and costs;

g.      Stating Plaintiff be awarded post-judgment interest; and

h.      Stating that Mr. Cotes be awarded any other equitable relief.

**PLAINTIFF DEMANDS A JURY ON ALL ISSUES SO TRIABLE.**

December 17, 2025

GRAYSON COTES

By:  */s/ Grayson Cotes*
     Grayson Cotes
     *Plaintiff*